**Weslie C. HANEKE, Appellant,**

v.

**SECRETARY OF HEALTH, EDUCATION AND WELFARE, et al.**

No. 74–1786.

United States Court of Appeals, District of Columbia Circuit.

Argued May 28, 1975.

Decided May 6, 1976.

David Rein, Washington, D. C., for appellant.

Mary-Elizabeth Medaglia, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Michael A. Katz, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellees.

Before BAZELON, Chief Judge, McGOWAN, Circuit Judge, and GEORGE C. EDWARDS, Jr.,* Circuit Judge for the Sixth Circuit.

Opinion for the Court filed by Circuit Judge McGOWAN.

McGOWAN, Circuit Judge:

This appeal presents the question whether the statutory principle of equal pay for substantially equal work requires the Civil Service Commission (CSC) to make position-to-position comparisons when a federal employee maintains that his position is improperly classified in relation to other jobs.

I

Appellant is a glassblower in the Instrument Shop of the Food and Drug Administration of the Department of Health, Education, and Welfare. His position is classified by HEW under the "Wage Grade" (WG) system pursuant to Subchapter IV of Title 5, "Prevailing Rate Systems." [1] On April 27, 1972, he filed a classification ap-

---

* Sitting by designation pursuant to Title 28, U.S. Code Section 291(a).

1. 5 U.S.C. § 5342(a)(2)(A) (Supp. IV, 1974) provides in relevant part:

(a) For the purpose of this subchapter—
(2) "prevailing rate employee" means—
(A) an individual employed in or under an agency in a recognized trade or craft, or other skilled mechanical craft, or in an un-

peal with HEW, requesting conversion of his position to the General Schedule (GS) (which would give him a higher salary and greater fringe benefits than the Wage Grade schedule), and backpay for the period of the alleged wrongful classification.[2] He alleged as grounds for reclassification that he was doing work identical to that done by other workers in his own shop,[3] and by glassblowers in other named agencies, all of whom were classified under the General Schedule. On June 28, 1972, HEW denied the reclassification request, ruling that appellant's position was properly classified under the Wage Grade schedule,[4] apparently without considering whether the other workers were, as alleged, doing identical work.[5]

Appellant appealed the HEW ruling to the CSC on July 7, 1972.[6] By letter dated March 9, 1973, his appeal was denied by the Chief of the Commission's Classification Appeals Office:

> Under the law we must classify your position by comparing it with the applicable classification standard rather than to any other position. A position-to-position

classification system would be impossible to administer and would result in a never-ending classification process.

J.A. at 11. The letter concluded that appellant's position properly fell within the definition of Glassblower WG–3204–14.

On September 13, 1973, appellant filed a complaint in District Court,[7] alleging that he "is classified as a Wage Grade worker while his fellow co-workers who do identical work are classified as Engineering Technicians under the General Schedule." J.A. at 3. The complaint charged that the Commission's refusal to reclassify appellant violated 5 U.S.C. § 5101 (1970),[8] which provides:

> It is the purpose of this chapter to provide a plan for classification of positions whereby—
>
> (1) in determining the rate of basic pay which an employee will receive—
>
> (A) *The principle of equal pay for substantially equal work will be followed;* and
>
> (B) variations in rates of basic pay paid to different employees will be in pro-

---

skilled, semiskilled, or skilled manual labor occupation, and any other individual, including a foreman and a supervisor, in a position having trade, craft, or laboring experience and knowledge as the paramount requirement.

Such employees are excluded from the "General Schedule" by *id.* § 5102(c)(7) (1970), the relevant part of which duplicates exactly the language of *id.* § 5342(a)(2)(A) (Supp. IV, 1974).

The head of each agency employing prevailing rate employees is required by statute to apply the wage schedules and rates established for those employees. *Id.* § 5343(a)(4); *see id.* § 5342(a) (definition of agency); *id.* § 5343(a)(1)–(3) (development of wage schedules and rates for prevailing rate employees).

**2.** The CSC has provided by regulation for an agency to determine in the first instance whether positions in that agency are subject to, or excluded from, the General Schedule pursuant to *id.* § 5102(c)(7) (1970) (discussed at note 1 *supra*). 5 C.F.R. § 511.202 (1975).

**3.** Haneke's coworkers in the FDA work on metal rather than glass.

**4.** At the same time, HEW ruled that appellant's position was misdescribed in his Position De-

scription, and increased his pay grade from WG–13 to WG–14.

**5.** The Government concedes for the purposes of this appeal that appellant's coworkers performed similar tasks on different materials but were classified differently. Brief at 9 n.9; *see* note 3 *supra*.

**6.** The Commission makes the final determination with respect to the applicability of 5 U.S.C. § 5102(c)(7) (1970) (discussed at note 1 *supra*). *Id.* § 5103; *see* 5 C.F.R. § 511.603(a)(2) (1975) (employee right to appeal to CSC from agency decision including him within or excluding him from the "General Schedule").

**7.** The complaint named as defendants the Secretary of HEW, the Commissioner of the Food and Drug Administration, the General Services Officer of the Bureau of Foods of the FDA, the supervisor of the instrument shop in which plaintiff is employed, and the Chairman, the Vice-Chairman and a member of the Civil Service Commission.

**8.** Appellant also alleged that the Commission's refusal to reclassify him denied him equal protection in violation of the Fifth Amendment.

portion to substantial differences in the difficulty, responsibility, and qualification requirements of the work performed and to the contributions of employees to efficiency and economy in the service; and

(2) individual positions will, in accordance with their duties, responsibilities, and qualification requirements, be so grouped and identified by classes and grades, as defined by section 5102 of this title, and the various classes will be so described in published standards, as provided by section 5105 of this title, that the resulting position-classification system can be used in all phases of personnel administration.[9] (Emphasis supplied).

Appellant sought an order requiring the Government to reclassify his position under the General Schedule and awarding him backpay for the lost wages that resulted from the defendants' failure to classify him under the General Schedule. In its answer, the Commission denied that the comparison employees performed identical work and asserted that appellant was properly classified under the Wage Grade schedule. It then moved for judgment on the pleadings or in the alternative for summary judgment, attaching as exhibits the various communications between HEW, the Commission, and appellant, and copies of the Commission's standards for the Wage Grade and General Schedule positions involved; appellant cross-moved for summary judgment. The District Court granted summary judgment for defendants, stating that "the complaint fails to state a claim upon which relief can be granted, or over

which this Court has subject-matter jurisdiction, and . . . that no genuine issue exists as to any material fact and [that] defendants are entitled to judgment . . as a matter of law." J.A. at 17. That order is the subject of this appeal.

## II

Recognizing that there is "a difference between prospective reclassification, on the one hand, and retroactive reclassification resulting in money damages, on the other," *United States v. Testan,* 424 U.S. 392, 403, 96 S.Ct. 948, 955, 47 L.Ed.2d 114, 124, 44 U.S.L.W. 4245, 4249 (1976) (No. 74–753), we consider these issues separately.

### A. *The Backpay Claim.*

The Supreme Court's recent decision in *United States v. Testan, supra,* leaves no doubt that appellant's claim for backpay was properly denied by the District Court.[10] The plaintiffs in that case filed an action in the Court of Claims alleging that the duties they were performing were identical to those performed by other trial attorneys in a different agency in positions classified at a higher GS rating, and they sought an order directing reclassification and awarding backpay for the period of wrongful classification. They premised their claim on the same theory which appellant now presses upon this court, namely, that the Classification Act, 5 U.S.C. § 5101 (1970), *see* pages ――――― of 175 U.S.App.D.C., pages 1293–1294 of 535 F.2d *supra,* confers a substantive right upon improperly classified federal employees to recover mon-

---

**9.** The words "this chapter" in § 5101 refer to Chapter 51 of Title 5, which pertains to the classification of employees under the General Schedule. Subchapter IV of Chapter 53 of Title 5, which contains the statutory provisions concerning "Prevailing Rate Systems," has a similar mandate:

It is the policy of Congress that rates of pay of prevailing rate employees be fixed and adjusted from time to time as nearly as is consistent with the public interest in accordance with prevailing rates and be based on principles that—

(1) there will be equal pay for substantially equal work for all prevailing rate employees who are working under similar conditions of employment in all agencies within the same local wage area;

(2) there will be relative differences in pay within a local wage area when there are substantial or recognizable differences in duties, responsibilities, and qualification requirements among positions.

5 U.S.C. § 5341(1)–(2) (Supp. IV, 1974).

**10.** After argument, decision in the present appeal was deferred pending the decision of the Supreme Court in *Testan.*

ey damages against the United States for the period of wrongful classification.[11]

The Court of Claims concluded that the Classification Act gave rise to such a claim, and remanded the case to the Civil Service Commission to compare the duties performed by plaintiffs with those performed by the other specified trial attorneys and to report the results back to the court. *Testan v. United States,* 499 F.2d 690, 205 Ct.Cl. 330 (1974) (*en banc*). The court indicated that, if the CSC determined on remand that the plaintiff employees were improperly classified, it would be willing to enforce their "legal right" to equal pay for equal work by granting a money judgment. The Supreme Court reversed, holding that "neither the Classification Act nor the Back Pay Act [5 U.S.C. § 5596 (1970)] creates a substantive right . . . to backpay for the period of . . . wrongful classification."[12] 424 U.S. at 407, 96 S.Ct. at 957, 47 L.Ed.2d at 126, 44 U.S.L.W. at 4250. In light of this holding we affirm the District Court's denial of appellant's claim for backpay.

### B. The Claim for Prospective Reclassification.

The distinction which the Court emphasized in *Testan* between retroactive reclassification resulting in money damages and prospective reclassification was a crucial one with respect to the jurisdiction of the Court of Claims. Tucker Act jurisdiction extends only to money claims against the United States, and the Court of Claims is without power to award essentially equitable relief. *United States v. King,* 395 U.S. 1, 2–3, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52, 55 (1969); *see Lee v. Thornton,* 420 U.S. 139, 95 S.Ct. 853, 43 L.Ed.2d 85 (1975); *Richardson v. Morris,* 409 U.S. 464, 93 S.Ct. 629, 34 L.Ed.2d 647 (1973). Consequently, the absence of a monetary cause of action deprived the Court of Claims of jurisdiction in *Testan* and made it "unnecessary for [the Supreme Court] to consider the additional argument advanced by the United States that the Classification Act does not require that positions held by employees of one agency be compared with those of employees in another agency." *United States v. Testan, supra,* 424 U.S. at 407, 96 S.Ct. at 958, 47 L.Ed.2d at 126, 44 U.S.L.W. at 4250. The Supreme Court also noted, however, that the petitioners in *Testan* "are not entirely without remedy" and that "[a] possible avenue of relief—and, and it, too, seemingly, is only prospective—is by way of mandamus, under 28 U.S.C. § 1361, in a proper federal district court." *Id.* at 403, 96 S.Ct. at 956, 47 L.Ed.2d at 124, 44 U.S. L.W. at 4249.

■ Appellant alleged that the District Court had jurisdiction over the claim for prospective relief pursuant to 28 U.S.C. § 1361 (1970), and we agree.[13] That section

---

**11.** The Court of Claims asserted jurisdiction over the claim pursuant to 28 U.S.C. § 1491 (1970), which provides:

> The Court of Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

*See generally Eastport S.S. Corp. v. United States,* 372 F.2d 1002, 1007–09, 178 Ct.Cl. 599, 605–07 (1967).

**12.** Appellant in the case *sub judice* did not claim a right to backpay under the Back Pay Act.

**13.** Section 1361 provides:

> The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

Preliminarily, we note that the Government has failed to press, both on appeal and before the District Court, the argument that the District Court lacks section 1361 jurisdiction over appellant's claim for prospective relief. The Government's motion for judgment on the pleadings and its brief on appeal argued only that the scope of judicial review in employment classification cases is quite limited and that the agency's action could be affirmed under the "arbitrary and capricious" standard of review. The Government has also informed the Supreme Court that it would not contest the jurisdiction of the District Court for the Eastern District of Pennsylvania to entertain a mandamus action seeking prospective relief that had

has been interpreted by this court as authorizing federal district courts "to issue appropriate corrective orders where Federal officials are not acting within the zone of their permissible discretion but are abusing their discretion or otherwise acting contrary to law . . . ." *Peoples v. United States Department of Agriculture,* 138 U.S. App.D.C. 291, 295, 427 F.2d 561, 565 (1970).[14] The mandamus remedy is an extraordinary one, and it is to be utilized only under exceptional circumstances, which are set out in the margin.[15] In our view, this case satisfies the relevant prerequisites. Appellant alleges that the Classification Act requires the defendant officials to compare the duties performed by appellant with those performed by other specified federal employees who are classified differently, and he has exhausted all other available remedies. Under these circumstances, if the defendant officials have a statutory duty to undertake a position-to-position comparison in processing appellant's claim of wrongful classification, that duty can be enforced by the district court under section 1361. *See Harlem Valley Transportation Association v. Stafford,* 500 F.2d 328, 334 (2d Cir. 1974). We therefore proceed to determine whether, on the allegations made in appellant's complaint, the Classification Act disables the defendant officials from declining to investigate those allegations simply because it would entail position-to-position comparisons.[16]

been filed by the complainants in *Testan. United States v. Testan, supra,* —— U.S. at ——, 96 S.Ct. at 955 n. 5, 47 L.Ed.2d at 123 n. 5, 44 U.S.L.W. at 4248 n. 5, *quoting* Reply Brief of the United States at 17 n. 7; *see Testan v. Hampton,* Civil No. 71–2250 (E.D.Pa., filed Sept. 16, 1971). Although we need not be reminded that the parties cannot by agreement confer jurisdiction on the federal courts, *e. g., Neirbo Co. v. Bethlehem Shipbuilding Corp.,* 308 U.S. 165, 167, 60 S.Ct. 153, 154, 84 L.Ed. 167, 170 (1939), the failure of the Executive branch to object to a characterization of the position-to-position classification requirement as ministerial is highly probative in determining whether mandamus will lie.

14. *Sovereign immunity has never been considered a bar to mandamus actions seeking "to compel public officials to adhere to the duties imposed upon them in their official capacities." Knox Hill Tenant Council v. Washington,* 145 U.S.App.D.C. 122, 129, 448 F.2d 1045, 1052 n. 8 (1971); *see, e. g., Thompson v. Washington,* 162 U.S.App.D.C. 39, 45, 497 F.2d 626, 631 (1973) (district court has jurisdiction under section 1361 over claim that Department of Housing and Urban Development has a duty under law to afford plaintiffs a hearing before passing on proposed rent increases); *Clackamas County v. McKay,* 94 U.S.App.D.C. 108, 219 F.2d 479 (1954) (Prettyman, J.), *cert. denied,* 349 U.S. 909, 75 S.Ct. 599, 99 L.Ed. 1244 (1955). *See generally* D. Currie, Federal Courts, Cases & Materials 623–24 (1975).

15. (1) The writ should be used only when the duty of the officer to act is clearly established and plainly defined and the obligation to act is peremptory. (2) The presumption of validity attends official action, and the burden of proof to the contrary is upon one who challenges the action. (3) Courts have no general supervisory powers over the executive branches or over their officers, which may be invoked by writ of mandamus. Interference of the courts with the performance of the ordinary duties of the executive departments of the government would be productive of nothing but mischief. (4) When the performance of official duty requires an interpretation of the law which governs that performance, the interpretation placed by the officer upon the law will not be interfered with, certainly, unless it is clearly wrong and the official action arbitrary and capricious. (5) For it is only in clear cases of illegality of action that courts will intervene to displace the judgments of administrative officers or bodies. (6) Generally speaking, when an administrative remedy is available it must first be exhausted before judicial relief can be obtained, by writ of mandamus or otherwise. *Hammond v. Hull,* 76 U.S.App.D.C. 301, 302, 131 F.2d 23, 25 (1942), *cert. denied,* 318 U.S. 777, 63 S.Ct. 830, 87 L.Ed. 1145 (1943) (footnotes omitted), *quoted in Cartier v. Secretary of State,* 165 U.S.App.D.C. 130, 138, 506 F.2d 191, 199 n. 8 (1974), *cert. denied,* 421 U.S. 947, 95 S.Ct. 1677, 44 L.Ed.2d 101 (1975).

16. Two of the limitations placed on the issuance of mandamus are that it "should be used only when the duty of the officer to act is clearly established and plainly defined and the obligation to act is peremptory" and that "[w]hen the performance of an official duty requires an interpretation of the law which governs that performance, the interpretation placed by the officer on the law will not be interfered with, certainly, unless it is clearly wrong and the official action arbitrary and capricious." *Hammond v. Hull, supra,* 131 F.2d at 25, *quoted in Cartier v. Secretary of State, supra,* 506 F.2d at 199 n. 8. We do not read those requirements to mean that the need for a court to construe the statutory provision which

## III

■ Section 5102(c)(7) of title 5 excludes from the General Schedule employees in recognized trades or crafts; such employees are considered "prevailing rate employees" and are included within the Wage Grade schedule. *See* note 1 *supra.* Haneke suggested to the agency that his position is properly classified not as a craft position under the Wage Grade schedule, but as an Engineering Technician under the General Schedule. His argument is that identical work done by other federal employees is called noncraft, and that it is arbitrary and capricious to call his work by a different name. The Commission offered two reasons for its actions. First, it noted that Haneke's position fell within the Wage Grade classification, and stated:

In our classification determinations we must conform to the classification law (Chapters 51, 53, Title 5, U.S.Code) which requires that each position be classified on the basis of its current duties, responsibilities, and qualification requirements, and in accordance with classification standards published by the Civil Service Commission. Under the law we must classify your position by comparing it with the applicable classification standard rather than to any other position. A position-to-position classification system would be impossible to administer and would result in a never-ending classifica-

tion process. *The development and utilization of classification standards enhance equality in that all similar positions have the same basic reference source regardless of their location in the Federal Government.*

Gov. Exh. A, at 1 (emphasis added). This statement simply does not answer Haneke's objection, grounded as it is on the statutory principle of equal pay for like work. He alleges that since identical work (by his fellow workers) is classified under the General Schedule, his work must also be so classified; in other words, appellant maintains that as a factual matter all similar positions *do not* have the same basic reference source.

The Commission (and, at an earlier stage in the process, HEW) offered a second reason for rejecting Haneke's request, namely that glassblowers are specifically excluded from the Engineering Technician (GS) classification by the position-Classification Standards. *See* Gov. Exh. C, at 4–7. The Department also cited and discussed the Guidelines for the Determination of Trades and Crafts, or Manual-Labor Positions of the Civil Service Commission's Introductory Material for General Information Concerning Position Classification Standards (CSC Handbook). *See* Gov. Exh. B. A careful examination of these texts shows that they simply explain why Haneke, as a glassblower, might be classified under the Wage

forms the basis of the action is a bar to the remedy of mandamus. Indeed, Judge Fahy has written in this context that although "[s]ome opinions state that the courts have authority to intervene when the duty of the executive officer is ministerial," a duty often becomes ministerial "only after a court has reached its own judgment about a disputed legal question and its application to a factual situation." *Seaton v. Texas Co.,* 103 U.S.App.D.C. 163, 256 F.2d 718, 723 (1958).

In any event, we note that even if we were to conclude that the duties imposed upon the CSC by the Classification Act are not such as to be amendable to mandamus under § 1361, the District Court would have jurisdiction under the Administrative Procedure Act. The cases in this circuit hold that the APA constitutes an independent grant of jurisdiction and a waiver of sovereign immunity with respect to agency action covered by the Act and not otherwise

reviewable. 5 U.S.C. §§ 701–06 (1970); *e. g., Rodway v. United States Dept. of Agriculture,* 168 U.S.App.D.C. 387, 514 F.2d 809, 817 n. 14 (1975); *International Eng'r Co., Div. of A–T–O, Inc. v. Richardson,* 167 U.S.App.D.C. 396, 512 F.2d 573, 577 (1975); *Scanwell Laboratories, Inc. v. Shaffer,* 137 U.S.App.D.C. 371, 424 F.2d 859 (1970). If jurisdiction is under the APA, a question might be raised whether 5 U.S.C. § 5103 (1970), which provides: "The Civil Service Commission shall determine finally the applicability of section 5102 of this title to specific positions and employees," brings the classification decision under the exceptions to APA review provided in *id.* § 701(1) and (2) (1970). We read § 5103 to mean that, as between an agency and the CSC, the CSC's decision is final. It is our understanding that the CSC does not assert that review is barred by § 5103. *See* Brief for Appellee at 7–8. *But cf. Kuhl v. Hampton,* 451 F.2d 340 (8th Cir. 1971).

Grade schedule; they do not answer his assertion that identical work is being called by a different name and given a different pay scale.

The Commission's responses to Haneke's claim highlight the essential role that a position-to-position comparison process plays in meeting the statutory mandate of equal pay for substantially equal work. Unless the Commission is required to specify the duties or functions that qualify some glassblowers for the General Schedule while others are classified under the Wage Grade schedule, the principle mandated by Congress of "equal pay for substantially equal work" is nothing more than a slogan.

A federal employee who is aware that the classification of his position does not square with the general written standards has been and no doubt feels unfairly treated. We believe, however, that the unfairness is even greater when the employee can point to other employees who receive more money for performing identical duties. In the latter case, the mere fact that a position may be properly classified according to the abstract definitions in CSC regulations will hardly restore an individual's confidence in the fairness of the system. Ironically, then, the CSC's interpretation of the statutory policy that employees be treated equally fails to remedy the sense of unfairness of those who are the most aggrieved.

It may well be that under established standards the performance of certain duties could qualify a federal employee for *both* Wage Grade and General Schedule classification; indeed, the complexity of the classification process may produce such a situation without any intentional wrongdoing or carelessness on the part of the CSC. But surely once an employee brings such a situation to the attention of the CSC, the Commission is not free to refuse to investigate

the alleged violation of the principle of equal pay for equal work simply because the classification process is so complex. We therefore conclude that in processing complaints of wrongful classification such as that pressed by Haneke, the CSC is required by statute to explain any apparent discrepancy in classification pointed out by the complainant.

■ In holding that the Commission or agency may not arbitrarily classify identical work differently, we do not believe that we are placing an intolerable burden upon the agencies and the Commission. Our decision does not require the Commission to pursue a position-to-position comparison process for initial classifications. The current procedure of comparing duties with established standards does not in itself violate the principle of equal pay for equal work; consequently, we assign no weight to the Commission's argument that "[a] position-to-position classification process would be impossible to administer and would result in a never-ending classification process." And a requirement that the CSC make position-to-position comparisons once a complaining employee identifies the comparison employees who allegedly receive greater pay for substantially similar duties is not "impossible to administer." It is our understanding that each employee has a "Position Description" outlining his duties. Haneke has identified a small number of employees whose duties he claimed were identical with his own. All that is required of the Commission is to identify those duties in the other position that qualify it for its classification (a task that presumably has been performed in the original classification process).[17] Haneke can then attempt to show that his job meets all of those criteria, and that the Commission's distinctions are without differences. If the jobs are identi-

---

17. We note that HEW went to other agencies for comparisons when initially evaluating Haneke's reclassification request. *See* Memorandum, "Advisory Opinion Request on Bureau of Foods Glassblower," Gov. Exh. A, at 51:

Study and comparisons indicate these positions have a wide variety of non-standard treatment in the Government at this time.

Calls were made to CSC, OPT, NIH, NOL, several places in the Interior Department and other places.

The Air Force Job Grading Standard for Glassblower was also used as "an auxiliary confirming device" in the final HEW ruling. *See id.* at 41.

cal in significant requirements, then the classifications given must be identical. The Commission may, of course, discover that the jobs are identical and all should be classified at the lower level.

We note, by way of reminder to future claimants, that in reviewing a CSC determination that the employee's duties are in fact identical or similar in all significant respects to the duties of others at the sought position, the district courts are engaged in limited judicial review, and their decisions are to be based on the agency record. *Gueory v. Hampton,* 157 U.S.App. D.C. 1, 510 F.2d 1222, 1225 (1974); *Polcover v. Secretary of Treasury,* 155 U.S.App.D.C. 338, 477 F.2d 1223, *cert. denied,* 414 U.S. 1001, 94 S.Ct. 356, 38 L.Ed.2d 237 (1973); *Scott v. Macy,* 131 U.S.App.D.C. 93, 402 F.2d 644, 647 n. 6 (1968). For the purposes of the instant case, which presents a purely legal question of statutory construction, it is clear that the Commission was arbitrary and capricious in refusing even to consider whether it was applying two labels to the same work. As the Court of Claims said, holding a similar refusal arbitrary in *Testan v. United States, supra:*

> Ordinarily . . . it is not arbitrary and capricious to refuse to consider the grade of employees other than the ones complaining. . . . Where, as here, employees all belong to a small readily manageable cadre, their jobs have a large nexus of duties shared in common, and the other employees are specifically pointed out by the complaining employees, we deem the case to be different. There may be a perfectly good explanation for the apparent discrepancy. We think as a reviewing court we are entitled to be informed by the CSC what it is, and not to have to take it on faith or speculate about it.

499 F.2d at 691, 205 Ct.Cl. at 332 (1974), *rev'd on other grounds,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114, 44 U.S.L.W. 4245 (1976) (No. 74–753).

We therefore reverse the district court with directions to remand to the Commission for reconsideration of its decision. *See* *Polcover v. Secretary of Treasury, supra,* 477 F.2d 1226 n. 2.

*It is so ordered.*