**Michael NEDEROSTEK, Plaintiff,**

v.

**Brock ADAMS, Secretary of Transportation, et al., Defendants.**

**Civ. A. No. 77–1425.**

United States District Court, District of Columbia.

March 29, 1978.

James W. Pressler, Jr. and John F. Markuns, Federal Aviation Science & Technological Association, Washington, D. C., for plaintiff.

A. Patricia Frohman, Asst. U. S. Atty., Washington, D. C., for defendants.

## MEMORANDUM OPINION

SIRICA, Senior District Judge.

The 1972 Amendments[1] to Subchapter IV of Chapter 53 of Title 5 of the United States Code[2] embody the legislative policies to be applied in determining pay levels for prevailing rate employees in federal service. Beyond that, the 1972 Amendments direct the Civil Service Commission (CSC) to undertake an administrative process of reviewing and revising existing job classifications in order to carry out the stated legislative directives. This case involves a challenge by a rate employee of the Federal Aviation Administration (FAA), a unit of the Department of Transportation, to an administrative decision sustaining his reclassification and reduction in pay from the Wage Grade 12 to the Wage Grade 11 level. Plaintiff basically claims that the decision upholding his reclassification offends the statutory policies set out in the 1972 Amendments. Plaintiff also contends that the decision reflects an erroneous application of binding Civil Service Commission regulations. The case is presently here on crossmotions for summary judgment.

In bare-bones outline, a review of the undisputed facts[3] reveals that plaintiff was employed by the FAA as a GS–12 General Facilities and Equipment Technician in the WG–4740 classification series until the series was eliminated pursuant to the reclassification process required by the 1972 Amendments. With the elimination of the WG–4740 series, plaintiff was reclassified as a Wage Grade 11 Maintenance Mechanic in the WG–4749 series. Yet despite this change in job title, plaintiff still performed the same kind of functions, with the same degree of skill, and with the same level of supervision that he previously performed. In that evidently lies the nub of this controversy.

On September 5, 1975, the Director of Training for the FAA informed the FAA regional directors of the elimination of WG–4740 classification. In addition, the Director asked the regional officials to review each job in the WG–4740 series and to make appropriate recommendations for the reclassification of WG–4740 positions. After evaluating the affected jobs, the regional directors dispatched their recommendations to the Department of Transportation's Director of Personnel and Training. And on January 29, 1976, the Director gave initial approval to the proposed reclassification.

---

1. Act of August 19, 1972, Pub.L. No. 92–392, 86 Stat. 564.

2. 5 U.S.C. §§ 5341–49 (1976).

3. The parties agree that no material fact is in dispute. The point in controversy is entirely the legal significance of the admittedly undisputed facts. Both sides rely on the certified administrative record.

This approval prompted consideration of the proposed change in classification by the CSC. On February 13, 1976, the Deputy Director of the CSC's Bureau of Personnel Management Evaluation informed the Department of Transportation that reclassification was in order for jobs in the WG–4740 series. In particular, the CSC notified Transportation that the job designation applicable to plaintiff had been changed from WG–4740 General Facilities and Equipment Technician to Maintenance Mechanic in the WG–4749 series. The CSC also advised Transportation that the position of Maintenance Mechanic could merit a Wage Grade rating as high as the Wage Grade 11 level. The basis for this conclusion was that, although the work covered by the WG–4749 series was properly classifiable at the WG–10 level, one extra grade step could be added in instances where the work performed by a Maintenance Mechanic entails a creditworthy degree of additional responsibility.

Plaintiff's position was found to fall within that category. On February 26, 1976, plaintiff received an advance notice of the reclassification of his job to the WG–4749 series at the Wage Grade 11 level. Approximately six weeks later, plaintiff was notified of the final decision reclassifying his post at the downgraded Wage Grade 11 level effective April 25, 1976. This decision led plaintiff to lodge an appeal with the CSC's Federal Employee Appeals Authority.

The administrative review process entailed a number of steps. First a hearing was convened by an Assistant Appeals Officer and relevant evidence taken. Upon completion of the hearing, the record was reviewed by the CSC's regional Personnel Management and Evaluations Division (PMED), after which the PMED issued an advisory opinion concluding that plaintiff was properly downgraded to the position of WG–4749–11 Maintenance Mechanic. Plaintiff then offered comments on the advisory opinion and the supplemented record was resubmitted to the PMED for further analysis.

On March 11, 1977, the PMED forwarded a supplemental opinion to plaintiff, who, through his representative, offered final comments on the classification opinion. This submission closed the administrative record and the case was then referred to the CSC for a final administrative decision. On May 16, 1977, the CSC decided that the FAA had acted properly in reclassifying plaintiff as a WG–11 Maintenance Mechanic. This lawsuit ensued.

The position of the defendants in this action may be succinctly stated. Defendants basically contend that the decision reclassifying plaintiff to a downgraded post was effected through lawful procedures, took account of all relevant statutory and regulatory criteria, and rests on substantial evidence. Plaintiff challenges this position on three grounds.

■ As a first line of attack plaintiff maintains that the agency's decision was based on a provision in Federal Personnel Manual Supplement (FPM Supp.) 512–1 [4] rather than a parallel yet revised provision in the FPM Supp. 532–1.[5] It is apparently

---

4. FPM Supp. 512–1, Part 1, Section II, C. 3. This section provides:

A mixed job involves performance on a regular and recurring basis of duties in two or more occupations at the same or different grade levels.

To assure consistency and equity in the grading of such jobs, the following rules apply:

a. A mixed job should be graded in keeping with the duties that (1) involve the highest skill and qualification requirements of the job, and (2) are a regular and recurring part of the job, even if the duties involved are not performed for a majority of the time. If a job involves regular and recurring duties at the same level in two or more occupations, such a mixed job is graded to that same level.

5. FPM Supp. 532–1, subchapter 6, Section 6–5(2). It reads:

Mixed jobs. In grading a job requiring the performance of work in two or more different occupations on a regular and recurring basis, the whole job is considered, including the full range and level of skills, knowledges, and qualifications required, as well as all other relevant job facts. Such a mixed job is graded in keeping with the highest skill and qualification requirements of the job, even if

plaintiff's contention that, if the agency had considered FPM Supp. 532–1, it could not have sustained the decision by the FAA downgrading plaintiff to a WG–11 job. Defendants dispute this. Defendants contend that even if FPM 532–1 supplies the governing criteria, the decision downgrading plaintiff is still supportable. The ostensible reason is that the criteria set out in the two parallel provisions are so similar that the application of either set of standards leads to precisely the same result. On the facts of this case, this Court agrees.

The relevant provision of FPM 532–1 states that a "mixed job is graded in keeping with the highest skill and qualification requirements of the job, even if the duties involved are not performed for a majority of the time but are regular and recurring." [6] In a like vein, FPM 512–1 reads "If a job involves regular and recurring duties at the same level in two or more occupations, such a mixed job is graded to that same level." [7] The overlaps between these two provisions is readily apparent. A fair reading of the two regulations indicates that the standard guiding the reclassification of mixed jobs is essentially the same in instances where the jobs involved entail functions that are themselves classifiable at the same WG level. Simply put, the rule is that the grading of positions involving mixed functions, *each of which merits the same wage grade*, should be no lower or higher than the grade the jobs would get if only one of the functions were involved. Illustratively, if a particular job regularly involves the skills of both a plumber and a carpenter, each of which carries a WG–10 rating, then the grade for that position

should not be any lower or higher merely because more than one skill is involved.

Applying that standard here, the conclusion emerges unmistakably that plaintiff was properly reclassified whichever of the two regulations the agency relied upon. The position held by plaintiff involves six separate job skills. Yet each of these functions is itself classifiable at the WG–10 level. Thus, the application of either FPM 532–1 or 512–1 requires a rating at the same WG–10 level.

This case does not involve a mixed job that entails several functions which are rated *at different grade levels*. If this were such a case, the application of FPM 512–1 rather than 532–1 might well make a difference. This is so because FPM 532–1, more unequivocally than 512–1, establishes the grading of a mixed job involving several functions *at varying wage grades* to be "in keeping with the highest skill and qualification requirements of the job." But because each of the job functions performed by plaintiff here is separately classifiable at the WG–10 level, the difference between the FPM 532–1 and 512–1 in this respect, while noteworthy, is without consequence.

As a second line of attack, plaintiff contends that the decision reclassifying his position offends the "equal pay for equal work" policy set out in the 1972 Amendments.[8] Plaintiff relies on *Haneke v. Secretary of HEW*, 175 U.S.App.D.C. 329, 535 F.2d 1291 (1976) for the proposition that federal employees performing the same work are entitled to have their jobs graded at the same pay levels.[9] In *Haneke*, plaintiff brought suit to compel the upgrading of

---

the duties involved are not performed for a majority of the time but are regular and recurring.

**6.** For the complete text, see note 5 *supra.*

**7.** For the complete text, see note 4 *supra.*

**8.** 5 U.S.C. § 5341(1) (1976):

It is the policy of Congress that rates of pay of prevailing rate employees be fixed and adjusted from time to time as nearly as is consistent with the public interest in accordance with prevailing rates and be based on principles that—

(1) there will be equal pay for substantially equal work for all prevailing rate employees who are working under similar conditions of employment in all agencies within the same local wage area;

.      .      .      .      .

**9.** In *Haneke*, the "equal pay for equal work" criterion derived not from 5 U.S.C. § 5341(1) (1976), but rather from 5 U.S.C. § 5101(1)(A) (1970). That difference in no way affects the analysis, however.

his job classification because fellow employees were performing precisely the same functions at a higher pay level. The trial court granted summary judgment in favor of defendants for, among other principal reasons, the reason that plaintiff's "'complaint fails to state a claim upon which relief can be granted.'" *Id.* at 332, 535 F.2d at 1294. But the Circuit Court for this jurisdiction reversed. As the Court stated, the legislative mandate of "equal pay for equal work" places an enforceable duty upon the CSC to make a reclassification "when the employee can point to other employees who receive more money for performing identical duties." *Id.* at 336, 535 F.2d at 1298.

*Haneke* is not this case, however. Here, unlike in *Haneke*, plaintiff does not charge that the CSC failed to investigate and take appropriate action on a complaint that "identified a small number of employees whose duties he claimed were identical with his own." *Id.* Rather, the plaintiff in this case claims that the CSC breached the "equal pay" requirement by failing to recognize the difference between his mixed WG–10 job and other WG–10 positions that involve a narrower range of functions. The difference between the two charges is obvious and controlling. As interpreted in *Haneke*, the "equal pay" principle only reaches situations where fellow employees are graded differently despite the similarity of their functions. But it does not cover situations, like the one present in this case, where fellow employees are graded at the same pay level despite differences in their jobs.

What the plaintiff in this case is in effect arguing is that the "equal pay for equal work" principle should be interpreted as containing an "unequal pay for unequal work" corollary. But plaintiff has not indicated why this is so. *Haneke* surely does not furnish any authority for this assertion. Neither do the provisions or policies embodied in the 1972 Amendments. Indeed, if the 1972 Amendments have any bearing on plaintiff's argument, they cut against it. The adoption of plaintiff's point of view could readily lead federal employers to allocate different pay grades to employees whose jobs, while involving somewhat different functions, are substantially the same in terms of overall responsibility and degree of skill. This eventuality would likely create the kind of unfairness that the "equal pay" mandate of the 1972 Amendments was specifically designed to remedy. Seen in this light, plaintiff's argument is not only unsupported by the "equal pay" principle, it is fatally undermined by it.

As a final line of attack, plaintiff maintains that the CSC erred in failing to consider the policy set out in 5 U.S.C. § 5341(4) (1976) as a factor in deciding to sustain plaintiff's reduction in grade. That provision states that

> It is the policy of Congress that rates of pay of prevailing rate employees . . . be based on principles that—
>
> .    .    .    .    .
>
> (4) the level of rates of pay will be maintained so as to attract and retain qualified prevailing rate employees.

It is plaintiff's contention that consideration of the "recruitment and retention" principle is essential to the validity of the administrative decision at issue in this case. Without a finding on that score, plaintiff suggests, plaintiff's downgrading must be reversed.

■ But plaintiff has offered no evidence—or even credible argumentation for that matter—that would in the slightest way indicate that the agency would have reached a different result if it had considered "recruitment and retention" as a factor. It is true that an agency acts arbitrarily when it fails to take account of a relevant factor in rendering an administrative judgment. *See Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). And when that kind of misjudgment takes place, the remedy is generally to send the matter back to the agency for reassessment in light of the missing consideration. *See Mobil Oil Corporation v. Dann*, 421 F.Supp. 995 (D.D.C.1976). But where, as in this case, it is highly unlikely, indeed, almost unimaginable, that reconsideration will lead to a

change in decision, a remand order is nothing more than an idle gesture. Thus, even assuming, without deciding, that the CSC erred in failing to take account of the "recruitment and retention" principle in deciding plaintiff's appeal, that error can reasonably be deemed to be harmless.

In sum, then, the Court holds that the decision of the CSC sustaining plaintiff's reduction in grade neither offends statutory requirements nor constitutes arbitrary administrative action. The Court therefore concludes that plaintiff's motion for summary judgment must be denied, and defendants' crossmotion must be granted.

An order in accordance with the foregoing will be issued of even date herewith.