**FOOD SERVICE DYNAMICS, INC., Plaintiff,**

v.

**Robert BERGLAND, Secretary of Agriculture, Defendant.**

**CHC FOOD SERVICE, INC., Plaintiff,**

v.

**Robert BERGLAND, Secretary of Agriculture, Defendant.**

**SCHOOL FEEDING CORP., Plaintiff,**

v.

**Robert BERGLAND, Secretary of Agriculture, Defendant.**

**Nos. 78C924–78C929.**

United States District Court, E. D. New York.

Feb. 23, 1979.

**1180**

Marcus & Katz, Mineola, N. Y., for plaintiffs by Lawrence K. Katz, Mineola, N. Y.

Edward R. Korman, U. S. Atty., E. D. New York, Brooklyn, N. Y., for defendant by Jan F. Constantine, Asst. U. S. Atty., Brooklyn, N. Y.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

These actions arise out of the operation of the National School Lunch Act, 42 U.S.C. § 1751 *et seq.* and seek release of money held by the State of New York and allegedly due plaintiffs under provisions of the Summer Food Service Programs, 42 U.S.C. § 1761 *et seq.* ("SFSP"). Jurisdiction is premised solely on the Mandamus Act, 28 U.S.C. § 1361, which provides for original jurisdiction in the district courts of actions in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff. The actions are before the court on defendant's motion to dismiss six complaints pursuant to Rules 12(b)(1), (6) and (7), F.R.Civ.P., for lack of subject matter jurisdiction, for failure to state a claim upon which relief may be granted, and for failure to join an indispensable or necessary party.

Plaintiffs are food service management companies, known as "vendors" under the SFSP, which was enacted to assist States in providing nutritious meals to children during school vacations by means of nonprofit food service programs. Under this program a State, here New York, can enter into an agreement with the United States Department of Agriculture ("USDA") by which the State agrees to administer the SFSP and federal funds are made available by the USDA to the State, permitting it to enter into contracts with service institutions or "sponsors" to provide for the actual feeding of the children; the USDA also pays for certain of the sponsor's costs in running the program. 7 C.F.R. § 225.12(a), (b). See generally 7 C.F.R. § 225.9(c). Vendors may be selected by a sponsor to undertake the actual preparation of the meals, if the sponsor chooses not to prepare the meals itself. See 7 C.F.R. § 225.11.

In the instant case, the State of New York, through its Department of Education, entered into an SFSP Agreement with the United States Department of Agriculture, effective July 1, 1976. The State thereby agreed "to accept Federal funds for expenditure in accordance with the applicable Regulations . . . and to comply with all the provisions" thereof. Various sponsors were designated to conduct the programs and they, in turn, engaged vendors to supply the necessary food and related services, who were supposed to be paid by the sponsors out of funds advanced by the State.

These plaintiffs seek to recover sums allegedly due them from sponsors for meals prepared during the months of June through September 1976. According to the complaints, the sponsors had defaulted on their payments and owe plaintiffs sums ranging from $87,484.44 to $519,422.19. In four of the six cases before the court, plaintiffs claim to have obtained judgments against their respective sponsors in the State courts which remain unsatisfied; they contend that, in each case, the plaintiff has taken either an assignment of the sponsor's right to receive funds or a judgment. (Plaintiffs' Memorandum at 11.) Plaintiffs assert that New York State has approved partial payment to the sponsors and is considering approval of additional sums. Thus,

they conclude that the State should pay the monies over to the plaintiffs as creditors of the sponsors.

According to defendant, although the funds for payment under the SFSP for 1976 have in fact been disbursed to New York State, the USDA has advised State officials that no further payments should be made until the validity of the sponsors' claims can be determined. Apparently, audits and investigation of the activities of sponsors and vendors in connection with the program have disclosed irregularities which have led to grand jury investigation of sponsors of four of the plaintiffs in the instant suit and to investigation of the sponsors of the remaining plaintiffs by the USDA's Office of Investigation. Thus, the USDA has instructed the State not to disburse monies until the pending investigations and possible criminal and civil suits are concluded.

Plaintiffs nonetheless seek to compel defendant to release the monies held by the State on the theory that his role in the distribution scheme is purely ministerial—a mere conduit for the funds—and that he has no power to withhold the funds or prevent their release. They argue in effect that defendant owes them a duty to release the funds and attempt to enforce the putative obligation by this action in the nature of mandamus. Because the issue raised appears to be without precedent, it is necessary to determine whether the actions properly sound in mandamus and, if so, whether the complaints set forth sufficient basis for granting the relief sought.

 Plaintiffs' allegations are sufficient to invoke our jurisdiction under the Mandamus Act, 28 U.S.C. § 1361. Defendant's argument that the court lacks subject matter jurisdiction because plaintiffs have not met the prerequisites for relief under § 1361 confuses the issue of jurisdiction with that of the merits of plaintiffs' actions. It would lead to the result that a court would never have jurisdiction to determine the merits of such claims if mandamus jurisdiction were unavailable to resolve whether plaintiffs have a clear right to relief or a duty is plainly owed them in the first instance. See *Mattern v. Weinberger,* 519 F.2d 150, 156–57 (3 Cir. 1975); *Andujar v. Weinberger,* 69 F.R.D. 690, 694 (S.D.N.Y. 1976).

 It is settled, however, that "the mandamus remedy is an extraordinary one, and it is to be utilized only under exceptional circumstances . . . ." *Haneke v. Secretary of Health, Education and Welfare,* 175 U.S.App.D.C. 329, 334, 535 F.2d 1291, 1296 (D.C. Cir. 1976). In this circuit, three elements must be satisfied before a writ in the nature of mandamus may issue: "(1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and peremptory duty on the defendant's part to do the act in question; and (3) lack of another available, adequate remedy." *Billiteri v. United States Bd. of Parole,* 541 F.2d 938, 946 (2 Cir. 1976); *Lovallo v. Froehlke,* 468 F.2d 340, 343 (2 Cir. 1972), *cert. denied,* 411 U.S. 918, 93 S.Ct. 1555, 36 L.Ed.2d 310 (1973). Thus, the court must determine on the basis of the allegations of the complaints and the applicable statutes and regulations whether plaintiffs have stated claims upon which relief may be granted. For the following reasons, the court concludes that plaintiffs are not entitled to relief. Hence, the complaints must be dismissed.

 First and foremost, defendant's role in the operation of the program is not ministerial and limited to the transmittal of funds in amounts determined by the State of New York. Close consideration of the applicable statutes and regulations reveals that the government retains a considerable degree of discretion in the operation of the statutory scheme, and therefore it cannot be said that defendant has a plainly defined and peremptory duty to release the monies held by the State in the circumstances presented. This discretion is evident in the statute itself and most certainly is implicit in the government's obligation to prevent misuse of tax revenues.

Under 42 U.S.C. § 1761, the Secretary is authorized to carry out a program to assist States in providing nonprofit food service

programs, § 1761(a)(1), and has a duty to forward to the States a letter of credit for payments of funds in an amount which the States demonstrate to the satisfaction of the Secretary to be necessary under subsection (e), § 1761(d). This same provision requires the Secretary to forward payments due under subsection (b) upon receipt of *valid* claims therefor. See also 7 C.F.R. § 225.6(b). Other provisions require the Secretary to publish proposed regulations relating to the implementation of the program, § 1761(g), and to establish standards and effective dates for the proper, efficient and effective administration of the program by the States. If the Secretary finds, moreover, that the State has failed to meet the standards or carry out the program in accordance with them, the Secretary may withhold funds as he determines appropriate. Section 1761(k)(2). Further, the States and service institutions participating in the program are required to keep records to enable the Secretary to determine whether there has been compliance with the section and the regulations. Section 1761(m). Audits and evaluations by the government of both State agencies and the sponsors are provided for in USDA regulations. See 7 C.F.R. § 225.15. Finally, civil and criminal penalties may be imposed upon whoever defrauds the United States under the section. Section 1761(o)(1).

■ These provisions amply demonstrate the discretion explicitly vested in the Secretary over the disbursement of funds under the program. His role is thus hardly ministerial. The fact that, in this case, the government has already disbursed funds to the State and has simply directed the State not to release them carries no significance; the mere transfer of the funds under the circumstances does not terminate the control Congress granted the Secretary over the program. Since it is the court's conclusion that mandamus would not lie against the Secretary to compel him to disburse funds to the State while in the process of fulfilling his statutory obligation of requiring compliance with the program's provisions, it follows that the same result must obtain where the Secretary is preventing release of funds already disbursed to the State pending the outcome of current investigations into the activities of the sponsors.

■ Even if the discretion to prevent release of the funds could not be drawn from the explicit requirements of the applicable statutes and regulations, such discretion would arise from the secretary's obligation to see that federal funds are used only in the manner prescribed by Congress. To suggest that the Secretary does not have power to prevent injury to the public fisc when he determines there is reason to believe that the program has been misused is an untenable proposition, even if it results in some temporary inconvenience or prejudice to those in plaintiffs' position, for example.

■ While the court is not unmindful of the unfortunate dilemma in which plaintiffs find themselves, their rights can be no greater than those of the sponsors with whom they dealt. Since it is the sponsors who are in a contractual relationship with the State, plaintiffs' entitlement to the funds must await resolution of the sponsors' claims. From this, it is clear that plaintiffs do not meet the other requirements for issuance of a writ in the nature of mandamus.

First, adequate remedies are currently available and are in fact being pursued by plaintiffs. In four of the instant cases, plaintiffs have proceeded to judgment against their respective sponsors. Although currently unsatisfied, there is no indication, however, that the judgments will not eventually be satisfied from funds held by the State, and, in fact, most of the plaintiffs have already initiated suits in State court against the State of New York seeking disbursement of funds to them as judgment creditors of the sponsors. Second, the court agrees with defendant's contention that these actions are in essence for breach of contract in excess of $10,000, and that, to the extent there is any remedy against the United States in these circumstances, the proper forum would be the United States Court of Claims under 28 U.S.C.

§§ 1346(a)(2) and 1491. We are informed that such an action is in fact pending in the Court of Claims.

Finally, although plaintiffs vigorously contest the assertion, defendant argues that plaintiffs' right to the relief sought is not clear. He suggests it is not certain that, should New York permit payment to the sponsors, the sponsors will pay the vendors involved in these actions: it is suggested that there may be prior liens or security interests against the sponsors which would preclude payment to the vendors. Plaintiffs do not deny that prior liens might exist. Rather, they argue that as assignees and judgment creditors they have a legitimate interest in the monies and therefore the question of prior liens or security interests is at most an evidentiary issue best reserved to a State court should a conflict among creditors of the sponsors actually arise.

This misses the point. The relief sought by plaintiffs in these actions is a court direction to the Secretary that he approve for payment to the State sums to which plaintiffs claim entitlement. This, in turn, they pray, will enable the State to pay monies due plaintiffs. Although it is now clear that the relief sought is actually the release of funds already in the hands of State officials, plaintiffs must demonstrate unequivocal entitlement to those funds to state a claim for relief under § 1361. This they have not done. While their interest in the funds is beyond question, this is not sufficient to warrant issuance of a writ in the nature of mandamus.

Accordingly, defendant's motion to dismiss the complaints is granted.[1] The Clerk of the Court is directed to enter judgment dismissing the complaints.

SO ORDERED.

The Clerk of the Court is further directed to furnish copies of this memorandum and order to the attorneys for the parties.

---

1. In view of the court's disposition of these actions, it need not address the other issues raised by the parties.