(790 P.2d 957)
No. 64,095

VERNE E. MULFORD, *Appellee*, v. THE DEPARTMENT OF HUMAN RESOURCES and THE DIVISION OF PERSONNEL SERVICES OF THE STATE OF KANSAS, *Appellants*.

Opinion filed April 20, 1990.

*A. J. Kotich*, chief counsel, Kansas Department of Human Resources, and *Deanne Watts Hay*, of Sloan, Listrom, Eisenbarth, Sloan & Glassman, of Topeka, for appellant Kansas Department of Human Resources.

*Adele Ross Vine* and *Linda J. Fund*, Kansas Department of Administration, for appellant Division of Personnel Services.

*Brad E. Avery*, general counsel, Kansas Association of Public Employees, of Topeka, for appellee.

Before ABBOTT, C.J., REES and RULON, JJ.

ABBOTT, C.J.: The Kansas Department of Human Resources (KDHR) and the Kansas Department of Administration, Division of Personnel Services (DPS), appeal from the trial court's reversal of the agency's ruling on the job classification of Verne E. Mulford.

Verne E. Mulford was a Physical Plant Supervisor II for the State of Kansas. In 1985, DPS did a comprehensive classification study of some job classes. It was determined that there was a need to update class specifications. In Phase II of the study, DPS reviewed 72 classes of mechanics, repairers, and operators.

Under the preliminary updated classification descriptions, Mulford was listed as a Physical Plant Supervisor II. As part of the standard procedure during the course of the study, after all positions were reassigned to the new proposed classes, the agencies were provided a printout of where the employees would be placed in the new class schedule. The various agencies then reviewed the printout to make changes.

In October 1986, Bud Pierce, the director of personnel services of KDHR received the printout from DPS that had the preliminary allocations for all of the Department's positions that were involved in the Phase II study. Pierce also received the proposed class specifications for the new classes. Pierce was asked to review the preliminary allocations and make corrections or suggestions. Pierce found problems with five of the eleven KDHR positions. One of the positions was Mulford's. It appeared to Pierce that the proposed class specification for the new Physical Plant Supervisor II did not fit Mulford's position; rather, Mulford's position fit the description of Physical Plant Supervisor I.

Pierce contacted Mulford's supervisory personnel and reviewed the preliminary allocations and proposed class specifications. They recommended that Mulford be classified as a Physical Plant Supervisor I. When the new printout came out, it listed Mulford's position as Physical Plant Supervisor I under the new scheme.

Under his old classification as Supervisor II, Mulford's salary range was 23. Under the new classification scheme as Supervisor I, Mulford's salary range was 23. If he had been a Supervisor II under the new scheme, his salary range would have been 25.

Mulford attended "Tell the Governor" day for state employees and complained about his job classification. He was informed by the Governor's office that an "on-site" review of his job would be done by DPS to determine the most appropriate classification. The review was done by Kenneth Otte and Lois Ryan, analysts for DPS. Mulford was allowed to present documentation to the analysts supporting his position.

After the on-site visit, both analysts independently analyzed the information and wrote up their reports; both found that Mulford should clearly be classified as a Physical Plant Supervisor I. DPS presented its final findings in a letter dated February 22, 1988, with the conclusion that Mulford was a Physical Plant Supervisor I. On March 23, 1988, Mulford filed a petition for judicial review in district court.

In his petition, Mulford argued that his job class was lowered without due process. KDHR and DPS filed a motion to dismiss, arguing that while there had been a reclassification of job titles, there was no change in salary and no damage. They also argued that the matter was not justiciable under the Kansas Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq.* Finally, they argued that, even if Mulford were damaged, back pay is not a proper remedy.

In his trial brief, Mulford argued that he had a property interest in his job, which cannot be infringed upon arbitrarily. He argued that the interest was in retaining the classification so as to achieve a pay gain and avoid the embarrassment of being placed in a lower job; that, although K.A.R. 1-4-1(c) allows classification plans to be revised, the only basis for reclassification is a change in duties; and that K.A.R. 1-1-1(c) requires a position-to-position study to be done to compare his duties to that of other employees to see if they are doing the same work.

KDHR argued that there is a difference between establishing a new classification system and reclassifying an employee under an existing system and that no showing of change of duties is needed when a new system is put in place. It also argued that a position-to-position review is unnecessary. The DPS generally made the same arguments.

The trial court reversed the agency action. It held that K.A.R. 1-4-1(c) required that there be a change in the kind of work Mulford did for there to be a new classification. It also held that, based on K.A.R. 1-4-1(a)(2), in order to reclassify an employee, a comparison had to be made between Mulford's past and present duties and his duties versus other employees—a position-to-position study. The court said, "Otherwise, the State could arbitrarily assign different classifications to positions with identical duties." The court ordered that Mulford be classified as a Physical

Plant Supervisor II and granted him back pay for which he would have been entitled as a Supervisor II.

Now, as appellee in this court, Mulford asserts generally the same arguments: that reallocation must be based on substantial changes in the duties of the position; that a position-to-position study must be done; and that the trial court correctly awarded back pay.

KDHR argues that the district court erred in finding that the reallocation of petitioner's position was arbitrary or capricious; that no change in duties is needed to reclassify under a comprehensive classification plan and no position-to-position study is required; and back pay is not a proper remedy. DPS generally makes the same arguments.

### 1. Position-to-Position Study

It is first necessary to determine what statutory and regulatory law governs. K.S.A. 75-2938(1) provides authority for classification and subsequent modification of the classification:

"[T]he director of personnel services, after consultation with the heads of state agencies or persons designated by them, shall assign each position in the classified service to a class according to the duties and responsibilities thereof. . . . After consultation with the director of the budget and the heads of state agencies or persons designated by them, the director shall recommend changes in classes from time to time, and such changes, when approved or modified and approved as modified by the governor, shall take effect on a date or dates specified by the governor."

K.S.A. 75-3747(1) authorizes the secretary of administration to adopt rules and regulations to carry out the Kansas Civil Service Act. K.A.R. 1-4-1 sets forth the procedure to be followed in classification:

"(a) the director shall prepare the classification plan after ascertaining, in cooperation with appointing authorities and principal supervisory officials, the duties and responsibilities of all positions in the classified service.

"(1) The classification plan shall establish an appropriate title for each class, describe the typical duties and responsibilities of the positions in the class, and indicate the qualifications for performance of the duties of the class.

. . . .

"(2) The classification plan shall be so developed and maintained that all positions substantially similar with respect to the kind, difficulty, and responsibility of work are included in the same class; . . . and that the same

schedule of pay may be applied with equity to all positions in the class.

. . . .

"(c) The classification plan shall be revised or amended whenever there are significant changes in organization, creation of a new classification, abolition of a classification, or change in the duties of responsibilities of a classification that make revision or amendment necessary."

Under K.S.A. 75-2938 and K.A.R. 1-4-1, new classification plans may be established when needed. That is precisely what happened in this case.

The real question, then, is whether a position-to-position study must be carried out under K.A.R. 1-4-7 whenever an employee requests one. The trial court said yes.

The regulations do put emphasis on equal treatment. K.A.R. 1-4-1(a)(2), quoted above, requires that similar positions be within a similar class. K.A.R. 1-1-1 sets forth the purposes of the personnel regulations:

"These regulations are intended to provide a uniform, comprehensive, and effective system of personnel administration for the State of Kansas. To provide such a system of personnel administration:

. . . .

"(c) Positions essentially alike shall be treated in a uniform manner in all personnel processes, and positions not so alike shall be treated with appropriate recognition of the nature and extent of the differences between them."

Mulford and the district court rely on these regulations for the proposition that, once an employee challenges his or her classification under a new classification scheme, a position-to-position study must be done. For this proposition, they cite *Haneke v. Secretary of Health, Ed. & Welfare*, 535 F.2d 1291 (D. C. Cir. 1976). Although *Haneke* concerns federal law and is not binding on this court, it does present similarities. In *Haneke*, the employee challenged his classification. The relevant statute at the time, 5 U.S.C. § 5101 (1970), provided:

"It is the purpose of this chapter to provide a plan for classification of positions whereby—

"(1) in determining the rate of basic pay which an employee will receive-

"(A) The principle of equal pay for substantially equal work will be followed; and

"(B) variations in rates of basic pay paid to different employees will be in proportion to substantial differences in the difficulty, responsibility, and

qualification requirements of the work performed and to the contributions of employees to efficiency and economy in the service."

Haneke argued that his job classification was too low and that a position-to-position study had to be done by the relevant commission when it reviewed his classification. The commission refused on the basis that such studies would be impossible to administer. The commission argued that comparison of the duties performed by an employee with the classification descriptions was sufficient.

The court held that, in order to attain the goal of equal pay for equal work, whenever an employee challenges his classification and can point to other employees who are doing the same work but receiving more pay, DPS must do a position-to-position study and be prepared to articulate the nature of the differences in the positions. The court held it was arbitrary and capricious not to do so under the facts of *Haneke*, 535 F.2d at 1298.

The Kansas Administrative Regulations do not use the phrase "equal pay for equal work." K.A.R. 1-4-1(a)(2) and K.A.R. 1-1-1(c) do emphasize the goal of treating similar positions similarly. By the express terms of K.A.R. 1-4-7, "In conducting the review, the director *may* review other positions as required." (Emphasis added.) The language of this regulation is permissive and *Haneke* is not on point. The decision of whether to do a position-to-position study is within the discretion of the director.

The trial court erred as a matter of law in holding that a position-to-position study must be done. Here, a new classification system was being put into place. The various people who had dealt with reclassification were all aware of what functions the various classified employees were doing. A position-to-position study would have been redundant and unnecessary. The agency did not act unreasonably, arbitrarily, or capriciously in not doing a position-to-position study.

### 2. Substantial Evidence

The scope of review of agency actions is set forth in K.S.A. 77-621:

"(a) Except to the extent that this act or another statute provides otherwise:
"(1) The burden of proving the invalidity of agency action is on the party asserting invalidity;
. . . .

"(c) The court shall grant relief only if it determines any one or more of the following:

. . . .

"(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act; or

"(8) the agency action is otherwise unreasonable, arbitrary or capricious."

The job descriptions for Physical Plant Supervisor I and Physical Plant Supervisor II contain substantial differences. The "distinguishing features" listed on the Physical Plant Supervisor II description are: "Differs from the Physical Plant Supervisor I class in which work involves supervision of skilled craft and trade workers in directing a small physical plant or a phase of a large physical plant." The distinguishing features listed on the Supervisor I description are: "Differs from the Physical Plant Supervisor II class in which the work is primarily administrative as well as supervisory."

These differences are unambiguous. Lois Ryan and Ken Otte visited Mulford on-site. They determined his job met the definition of a Supervisor I. The notes from the visit state, "The supervision of skilled workers is precisely what Mr. Mulford does. . . . Mr. Mulford's job responsibilities involve only a small percentage of administrative duties. . . . [T]he two levels of administrators above Mr. Mulford perform primarily all the administrative duties, lessening the level of responsibility of Mr. Mulford."

There is substantial evidence to support KDHR's determination that Mulford is a Physical Plant Supervisor I and the trial court erred in reversing the agency.

By reason of the above, the remaining issues are moot.

Reversed.