**AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL–CIO et. al., Plaintiffs,**

v.

**Constance J. HORNER, Office of Personnel Management, Defendants.**

**Civ. A. No. 81–2210.**

United States District Court, District of Columbia.

Aug. 15, 1985.

Joseph Henderson, Washington, D.C., for plaintiffs.

Robert Seldon, Asst. U.S. Atty., Washington, D.C., for defendants.

MEMORANDUM

JOHN GARRETT PENN, District Judge.

The plaintiffs, the American Federation of Government Employees (AFGE) and a number of individuals employed by the defendant United States Air Force, filed this action seeking declaratory, injunctive and monetary relief. They challenge the defendants' decision to classify their present jobs as Air Force Planners and Estimators under the General Schedule (GS) pay scales

as Engineering Technicians rather than under the Wage System Production Facilitation Pay Plan (WD/WN). Specifically, the plaintiffs challenge a September 18, 1978, decision by the Civil Service Commission (CSC), now the Office of Personnel Management (OPM), concerning the proper classification of certain engineering technician positions in the Department of the Air Force (Air Force) under the Classification Act (Act), 5 U.S.C. § 5101 *et. seq.* The case is now before the Court on cross-motions for summary judgment.

I

AFGE is a labor organization representing more than 750,000 federal employees worldwide. The individual plaintiffs are Air Force civilian employees holding engineering technician, GS–802, positions at the GS–7 grade level. All of the individual plaintiffs work as planners within Base Civil Engineering Squadrons located at various Air Force bases. Plaintiffs claim to represent a class composed of all individuals employed by the Air Force as GS–802, engineering technicians at the GS–7 grade level.

At the time this action was brought, the Air Force employed approximately 1,095 individuals in the engineering technician series, GS–802, in grade levels GS–7 through GS–9. They perform a variety of functions in a variety of organizational units and approximately 338 of those individuals are at the GS–7 grade level. Approximately 780 of the Air Force engineering technicians work in base civil engineering squadrons. 480 of these individuals perform in a function described by the Air Force as the "planner" function. Approximately 177 of these civil engineering planners, including all of the individual plaintiffs, are at the GS–7 level. The Air Force has developed a series of standardized position descriptions for the Engineering Technicians located in its Civil Engineering Squadrons and prescribed that its local activities follow the applicable position descriptions in assigning duties, responsibilities and qualifications for such positions.

Duties, responsibilities and qualifications for the remaining Air Force Engineering Technicians are established at the local level.

The Department of the Navy (Navy) employs approximately 6,800 individuals under a prevailing rate wage system known as the Production Facilitating Pay Plan. These individuals work in various positions at approximately 130 Navy installations throughout the world. Approximately, 4300 of these individuals work at the WD–8 grade level, of whom a large but unspecified portion work in positions entitled "Planner and Estimator". In addition, Navy has a small number of General Schedule positions which perform planning and estimating work. Duties, responsibilities and qualifications for employment for all the positions in the Navy are determined at the local activity level.

The Department of the Army (Army) has approximately 870 positions doing work in the nature of planning and estimating at approximately 75 Army installations. Of these, approximately 685 perform work in the facilities engineering area. Approximately 630 of these positions are currently classified under the Production Facilitating Pay Plan and the remaining 55 are classified under the General Schedule. Duties, responsibilities and qualifications for employment for all positions in the Army are determined at the local level.

On September 18, 1978, OPM's Classification Appeals Office issued a classification decision concerning certain planner positions located in Air Force Base Civil Engineering Squadrons. The decision found that trade or craft experience was not the paramount requirement for such positions and that such positions were properly classified under the General Schedule in the Engineering Technician Series GS–802. In rendering its September 18, 1978 decision, OPM did not conduct a position-to-position comparison between the positions being considered and the allegedly similar positions in the Navy or Army.

By letter dated December 10, 1980, OPM requested the Department of Defense to

review its planner positions and insure that they are classified consistently with OPM classification policies and principles, including the September 18, 1978 decision. In response to that letter, the Department of Defense instituted a study of its Production Facilitating positions to determine their proper classification.

## II

The statutory basis for classification of positions in the General Schedule is stated in the Act. Section 5106 provides for placement of each position in its appropriate class and grade, and Section 5104 states the general standards for classification of positions from Grade GS-1 to Grade GS-18. Section 5105 directs OPM to prepare standards for placing positions in their proper classes and grades. Sections 5112 and 5346 provide the basis for appeal to OPM in classification matters. They authorize OPM to ascertain the facts as to the duties, responsibilities and qualification requirements of a position; decide whether a position is in the appropriate class, or occupation and grade; and change a position from one class, occupation or grade to another class, occupation or grade when the facts warrant. OPM's decision concerning these classification issues are binding on other federal agencies. Section 5112 further provides that an affected employee or agency may request OPM to exercise its appellate authority concerning these issues. Finally, Section 5115 authorizes OPM to prescribe the regulations implementing these statutory provisions.

The plaintiffs contend that their positions are similar to related positions in the Army and the Navy and that the decision of OPM was in error. "[I]n reviewing a [OPM] determination that the employee's duties are in fact identical or similar in all significant respects to the duties of others at the sought position, the district courts are engaged in a limited judicial review, and their decisions are to be based on the agency record." *Haneke v. Secretary of Health, Education, and Welfare,* 175 U.S.App.D.C. 329, 337, 535 F.2d 1291, 1299 (1976) (cita-

tions omitted). The issue then is not whether the Court would have reached the same conclusion on the same facts, but rather, whether the administrative decision was arbitrary, capricious, or otherwise not in accordance with the law. *See Haneke, supra. See also Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 414-416, 91 S.Ct. 814, 822-824, 28 L.Ed.2d 136 (1971).

## III

The Act provides that in determining the rating of basic pay which an employee will receive, the principle of equal pay for substantially equal work will be followed. 5 U.S.C. § 5101(1)(A). Plaintiffs contend that in considering their complaint, OPM failed to follow the procedures mandated by the Act and relevant court decisions. Specifically, the plaintiffs feel that the defendants failed to follow the decision in *Haneke, supra.*

In *Haneke,* the plaintiff was a glass blower employed in the Instrument Shop of the Food and Drug Administration of the Department of Health, Education and Welfare. His position was classified under the "Wage Grade" system, and he sought conversion of his position to the General Schedule which would have given him a higher salary and greater fringe benefits. He asked the agency to compare his position with other workers in his own shop, all of whom worked on metal rather than glass, and with glass blowers in other named agencies, all of whom were classified under the General Schedule. The Court noted that the agency denied the reclassification request, "ruling that [plaintiff's] position was properly classified under the Wage Grade Schedule, apparently without considering whether the other workers were, as alleged, doing identical work". *Haneke,* 175 U.S.App.D.C. at 331, 535 F.2d at 1294 (footnotes omitted). Haneke appealed to CSC but his appeal was denied with a statement that, "[u]nder the law we must classify your position by comparing it with the applicable classification standard rather than any other position. A

position-to-position classification system would be impossible to administer and would result in a never-ending classification process". *Id.* The court held that the agency or CSC may not arbitrarily classify identical work differently. It further held that the decision does not require an agency or OPM to pursue a position-to-position comparison for initial classification, but that once a complaining employee identifies the comparison employees, then the agency or OPM should make a position-to-position comparison. 175 U.S.App.D.C. at 336, 535 F.2d at 1298. The Court also noted that such a comparison was not "impossible to administer" since *Haneke* had identified only a small number of employees. "All that is required [of the agency or OPM] is to identify those duties in the other position that qualify it for classification" and the complainant "can then attempt to show that his job meets all of those criteria, and that [OPM's] distinctions are without differences". *Id.* Thereafter, the Court, after noting that "the district courts are engaged in limited judicial review" and that "their decisions are to be based on the agency record" went on to state the reasons for its review of *Haneke*, namely, "[f]or the purposes of the instant case, which presents purely a legal question of statutory construction, it is clear that the [CSC] was arbitrary and capricious in refusing even to consider whether it was applying two labels to the same work". 175 U.S.App.D.C. at 337, 535 F.2d at 1299.

As a means of amplifying its decision, the *Haneke* court cited to the language of the Court of Claims in *Testan v. United States*, 499 F.2d 690, 205 Ct.Cl. 330 (1974), *reversed on other grounds*, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). The *Testan* court stated that

> Ordinarily ... it is not arbitrary and capricious to refuse to consider the grade of employees other than the ones complaining ... Where, as here, employees all belong to a small readily manageable cadre, their jobs have a large nexus of duties shared in common, and the other employees are specifically pointed out by the complaining employees, we deem the

case to be different. There may be a perfectly good explanation for the apparent discrepancy. We think as a reviewing court we are entitled to be informed by the CSC what it is, and not to have to take it on faith or speculate about it. 499 F.2d at 691.

■ In short, *Haneke* stands for the principle that when a federal employee can point to other federal employees who are doing the same work but receiving more pay, he has a right to complain under the Act. When he does, it is not enough for the agency or OPM to merely cite to the abstract definitions in the relevant regulations; rather, the agency or OPM must make. a meaningful comparison between the two positions and, if it is determined that there is a difference in the positions, be prepared to articulate the nature of those differences. Only in that manner can the agency or OPM insure that "the principle of equal pay for substantially equal work will be followed". In *Haneke*, the agency and CSC did not follow that guideline, but chose instead to rest their determination upon the regulation or the applicable classification rather than on a position-to-position comparison. Such action was arbitrary and capricious under the facts of that case and therefore was subject to reversal by the court.

## IV

Turning to the instant case, the Court notes that the defendants did not conduct a position-to-position comparison. Defendant's Statement Of Material Facts As To Which There Is No Genuine Issue ¶ 16. Rather, OPM used a "core" summary and then sought to determine whether the plaintiffs' position deviated from the "core". The "core" purports to be a certificate.

The troubling aspect of this matter is that the defendants contended, and presumably still contend, that this case is not ripe for adjudication because, pursuant to OPM's instruction of December 10, 1980, the Department of Defense (DOD) is inves-

tigating the positions of Planners and Estimators in the Army and the Navy. The defendants argue that this may answer the concerns the plaintiffs have raised with respect to similar positions in those departments, and it will result in more consistent classification among all Production Facilitating Positions in DOD. Thus, the defendants argue, this case is not ripe for adjudication. *See Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). The Court had asked the parties whether they wish to file additional memoranda without specifically making reference to the above issue, but the parties have declined to do so. The Court assumes then that the agency is still conducting its survey.

The Court concludes, however, that it need not dwell on that issue in view of the decision in *Barnhart v. Devine*, 771 F.2d 1515 (D.C.Cir.1985). In that action, the plaintiffs requested that a position-to-position comparison be conducted to determine whether the plaintiff employees of the National Weather Service were performing substantially the same work as other National Weather Service employees classified at a higher pay level. OPM denied that request on the grounds that it was not required to make position-to-position comparisons and that it was only required to compare plaintiff's position to the pertinent classification standard promulgated under the Act. The Court of Appeals affirmed the dismissal of the action by the District Court noting that the plaintiffs were required to present their grievance to the Office of Special Counsel (OSC), since the complaint related to a "prohibited personnel practice". That Court cited *Haneke* but noted the changes in administration of the government employment statute brought about by the Civil Service Reform Act of 1978, Pub.L. No. 95–457, 92 Stat. 111 (codified as amended in scattered sections of Title 5 of the United States Code).

█ The same rule should apply in the instant case since the plaintiffs, like those in *Barnhart*, have failed to use an alternative remedy which was available to them.

Thus for these reasons this case must now be dismissed.

Although the Court dismisses this action, it must remind the defendants of their obligations under *Haneke*, as restated in *Barnhart*, that they, or the OCS, "might well be required to undertake a position-to-position comparison of the type contemplated by *Haneke* on the part of the old CSC". *Barnhart*, at 1526, n. 20.

This action will be dismissed. An appropriate order has issued.