The CROW TRIBE OF MONTANA,
Plaintiff,

v.

The UNITED STATES of America,
et al., Defendants.

Civ. A. No. 87–2155.

United States District Court,
District of Columbia.

July 20, 1990.

Thomas E. Towe, Towe, Ball, Enright & Mackey, Billings, Mont., William Gray Shaffer, John Longstretch, Preston, Gates, Ellis & Rouvelas Meeds, Washington, D.C., for plaintiff.

Silvia Sepulveda-Hambor, U.S. Dept. of Justice, Environment and Natural Resources Div., General Litigation Section, Washington, D.C. (Roger Thomas, Office of Field Solicitor, U.S. Dept. of the Interior, Billings, Mont., Michael Mason, Land and Minerals Branch, Div. of Indian Affairs, Office of the Sol., U.S. Dept. of the Interior, Washington, D.C., of counsel), for defendants.

MEMORANDUM OPINION

NORMA HOLLOWAY JOHNSON, District Judge.

The Crow Tribe of Montana (Crow Tribe), a federally recognized Indian tribe under the laws and treaties of the United States, seeks a declaratory judgment and a writ of mandamus against the United States and federal officials responsible for the enforcement of Section 2 of the Crow Act of 1920, 41 Stat. 751 (1920) ("Section 2 of the Crow Act" or "Section 2"). In its second amended complaint, the Crow Tribe alleges that defendants have failed to enforce Section 2 of the Crow Act, which prohibits any person from acquiring more than a certain number of acres of land from a Crow Indian within the boundaries of the Crow Indian reservation.

Presently before the Court is the motion of defendants to dismiss the second amended complaint. This motion advances two grounds for dismissal: First, defendants maintain that the Crow Tribe lacks stand-

ing to bring this suit because it cannot demonstrate injury and because prudential considerations militate against standing. Second, the government asserts that the doctrine of sovereign immunity and the discretionary authority of federal officials bar relief in the form of mandamus. For the reasons given below, the motion to dismiss is denied.

## DISCUSSION

### I. Standing

■ The discrete claim presented in this case is that federal officials have failed to enforce Section 2 of the Crow Act. This statute provides:

> No conveyance of land by any Crow Indian shall be authorized or approved by the Secretary of the Interior to any person, company, or corporation who owns at least [640] acres of agricultural land or [1,280] acres of grazing land within the boundaries of the Crow Indian reservation, nor to any person who, with the land to be acquired by such conveyance, would become the owner of more than [1,280] acres of agricultural land or [1,920] acres of grazing land within said reservation. Any conveyance by any such Indian made directly or indirectly to any such person, company, or corporation of any land within said reservation as the same now exists, whether held by trust patent or by patent in fee shall be void and the grantee accepting the same shall be guilty of a misdemeanor and be punished by a fine of not more than $5,000 or imprisonment not more than six months or by both such fine and imprisonment.

41 Stat. 751 (1920). Thus, a conveyance of land that violates this provision is subject to two distinct components of the provision: one, the conveyance is *per se* void; and two, the grantee, but not the grantor, is guilty of a misdemeanor. The Crow Tribe maintains that Congress intended that enforcement of Section 2 would protect the territorial integrity of the reservation and the sovereignty of the Tribe. Therefore, plaintiff argues, the Tribe is the direct ben-

eficiary of the Act and, as such, has standing to challenge its nonenforcement.

The doctrine of standing, under current Supreme Court precedent, encompasses both constitutional requirements and prudential considerations. Article III of the Constitution limits the power of courts to the resolution of "cases" and "controversies." *See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 471, 102 S.Ct. 752, 757, 70 L.Ed.2d 700 (1982). To establish standing under article III, a plaintiff must demonstrate "actual or threatened injury," *Glandstone Realtors v. Village of Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979), that "fairly can be traced to the challenged action" and "is likely to be redressed by a favorable decision," *Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 41, 96 S.Ct. 1917, 1926, 48 L.Ed.2d 450 (1976).

Prudential considerations may also determine whether a plaintiff has standing to sue. In general, courts employ the zone of interests test to determine whether Congress intended to authorize a particular plaintiff to invoke the power of the courts to enforce a statute. *Hazardous Waste Treatment Council v. Thomas,* 885 F.2d 918, 921–22 (D.C.Cir.1989). This test requires that the interests sought to be protected by a plaintiff be "arguably within the zone of interests to be protected or regulated by the statute in question." *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970). The Supreme Court has more recently stated that the zone of interests test should be used to infer congressional intent to deny standing only "if the plaintiff's interests are so marginally related or inconsistent with the purposes of the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Clarke v. Securities Industry Association,* 479 U.S. 388, 399, 107 S.Ct. 750, 757, 93 L.Ed.2d 757 (1987).

Applying the standing doctrine to the case at bar, the Court concludes that the

Crow Tribe has standing under article III and the zone of interests test to maintain this suit. First, the Crow Tribe has sufficiently established that it is injured by the alleged failure of the government to enforce Section 2 of the Crow Act. In arguing that the Tribe lacks standing, defendants point out that Section 2 is applicable only to conveyances of land made by individual members of the Crow Tribe and not to conveyances made by the Tribe itself. Therefore, defendants argue, only individual Indians, and not the Crow Tribe, can demonstrate actual or threatened injury caused by Section 2 violations.

However, the purpose of restricting the alienation of allotted lands through the enforcement of Section 2 is to prevent any one firm, person, or corporation from acquiring a large acreage of land within the Crow reservation. Such ownership of reservation land by non-Indians is inconsistent with the interests of the Crow Tribe in preserving the integrity of the reservation. While the goal of the Crow Act, as a whole, was to "break up the reservations," Defendants' Reply at 14,[1] Section 2 of the Crow Act limited the market for reservation land and, in this respect, protected the Tribe's interest in preserving a contiguous land base, to which the Tribe's culture and socie-ty is closely tied, according to plaintiff. On this basis, the Court finds that the Crow Tribe is a beneficiary of the restriction on alienation of land in Section 2 and, therefore, defendant's alleged failure to enforce Section 2 poses an actual or threatened risk of injury to the Tribe sufficient to confer standing in this case.[2]

Next, the alleged injury to the Crow Tribe can be traced directly to the challenged action—namely, the failure of federal officials to enforce Section 2. Furthermore, a favorable decision in the form of a mandamus would be likely to redress, to some extent, the harm alleged by plaintiff.[3] Defendants argue that a proper structural concern for the separation of powers, which underlies the doctrine of standing, indicates that standing is inappropriate here, because the Crow Tribe is seeking to compel agency enforcement of a statute. The Court disagrees. The question of what Congress intended to commit to executive discretion in enacting Section 2 is a matter of substantive law in this case rather than an issue of standing. *See Women's Equity Action League v. Cavazos*, 879 F.2d 880, 886 (D.C.Cir.1989).[4] Accordingly, the Court finds that the Crow Tribe has standing to maintain this suit.

---

1. In their reply brief, defendants point out that the overriding goal of the Crow Act of 1920—like other such acts providing for the allotment of tribal lands to individual Indians, subject to restraints on alienation—was to abolish the Crow reservation. *See generally*, F. Cohen *Handbook of Federal Indian Law* 127–143 (1982). Cohen notes that as a consequence of the allotment policy over half of Indian lands passed from native ownership. The result has been a checkerboard ownership pattern that has "interfered with tribal culture and society." *Id.* at 138, 159.

2. For the same reasons, the Court concludes that the interest of the Crow Tribe in preventing any single, non-Indian landowner from acquiring a large tract of reservation land is at least "arguably within the zone of interests to be protected by" Section 2 of the Crow Act. *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. at 150, 90 S.Ct. at 827. The fact that Section 2 is directed specifically at conveyances of land by individual Indians does not establish, as defendants maintain, that the Tribe does not benefit from the limitation on such conveyances. Therefore, prudential con-siderations do not militate against the Tribe's standing to bring this suit.

3. In making this finding, the Court is mindful that the inquiry on the issue of standing "in no way depends on the merits" of plaintiff's claim. *Women's Equity Action League v. Cavazos*, 879 F.2d 880, 886 (D.C.Cir.1989), quoting *Warth v. Sedlin*, 422 U.S. 490, 500, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975); *see also Competitive Enterprise Institute v. NHTSA*, 901 F.2d 107, 113 (D.C.Cir.1990) ("the standing determination must not be confused with our assessment of whether the party could succeed on the merits").

4. Indeed, in contrast to the government's separation of powers argument, the Court is persuaded that where administrative action is legally inadequate to enforce a duly enacted statute, judicial "review promotes rather than undermines the separation of powers, for it helps to prevent the executive branch from ignoring congressional directives." Sunstein, *Reviewing Agency Inaction After* Heckler v. Chaney, 52 U.Chi.Law.Rev. 653, 670 (1985).

## II. Mandamus

■ In support of their motion to dismiss, defendants make two arguments with regard to the nature of the relief sought in this case. First, defendants maintain that sovereign immunity is a bar to this suit. Second, they argue that the decision whether to enforce Section 2 of the Crow Act is committed to the absolute discretion of executive officials.

Turning to the first argument, the Crow Tribe's claim for relief is based in part on 28 U.S.C. § 1361, which provides:

The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

The D.C. Circuit has interpreted this section as authorizing federal district courts "to issue appropriate corrective orders where Federal officials are not acting within the zone of their permissible discretion but are abusing their discretion or otherwise acting contrary to law...." *Peoples v. U.S. Dep't of Agriculture*, 427 F.2d 561, 565 (D.C.Cir.1970).

The mandamus provision of 28 U.S.C. § 1361 has been held to be a waiver of sovereign immunity in actions seeking to compel public officials to adhere to the duties imposed upon them in their official capacities. *Haneke v. Secretary of HEW*, 535 F.2d 1291, 1296 n. 14 (D.C.Cir.1976); *Knox Hill Tenant Council v. Washington*, 448 F.2d 1045, 1052 n. 8 (D.C.Cir.1971); *see also* C. Wright, A. Miller & E. Cooper, 14 *Federal Practice and Procedure* § 3655 (1985) (hereinafter Wright & Miller) (sovereign immunity does not bar mandamus actions to compel performance of ministerial duties that are compelled by law). Defendants cite no counter authority for the ar-

gument that sovereign immunity is a bar to a mandamus action seeking prospective relief. Therefore, this ground for dismissal is rejected.

■ Defendants' second argument is that the decision whether to enforce Section 2 is committed to the discretion of defendant federal officials and, therefore, relief in the form of mandamus is not authorized under 28 U.S.C. § 1361. Indeed, mandamus may not be used to influence a federal officer's exercise of discretion. *Haneke*, 535 F.2d at 1296; Wright & Miller at § 3655. "On the other hand, if the officer is acting without authority, or contrary to a clear duty, or in clear abuse of his discretion, the statute will apply." Wright & Miller at § 3655.

In the present case, the nature of defendants' duties under Section 2 of the Crow Act is unclear at this stage in the litigation. Certainly, the decision whether to prosecute a particular alleged violation of Section 2 is within the discretion of the attorney general, as defendants point out. However, that grant of discretion is not unbounded,[5] and it clearly does not authorize defendants to abdicate all enforcement of Section 2, as plaintiff alleges is the situation here.[6] In other words, the Court recognizes a distinction between exercising the discretion to set enforcement priorities and failing altogether to carry out the obligations that Congress has imposed on the executive.[7] The latter is properly subject to judicial review.

Moreover, the unique relationship of the Crow Tribe and the United States—which is shaped by treaties between the parties and by the government's fiduciary responsibility—may place a special burden on defendants to enforce Section 2 and, in effect, limit the discretion of defendants. First, the Second Treaty of Fort Laramie, entered

---

**5.** *See, e.g., Greene v. Costle*, 577 F.Supp. 1225 (W.D.Tenn.1983) (district court had jurisdiction under mandamus statute where plaintiff sought to compel EPA enforcement of the Clean Water Act).

**6.** Plaintiff has presented evidence suggesting that defendants have not enforced Section 2. *See* United States Department of Interior, Office

of the Inspector General, Memorandum Audit Report, "Purchases of Crow Indian Reservation Lands," March 3, 1986.

**7.** *See* Sunstein, *supra,* at 670. Thus, the principle of prosecutorial discretion "does not authorize the executive to fail to enforce those laws of which it disapproves." *Id.*

into by the Crow Tribe and the United States in 1868, provides:

> If bad men among the whites or among other people, subject to the authority of the United States, shall commit any wrong upon the person or property of the Indians, the United States, will, upon proof made to the agent and forwarded to the Commissioner of Indian Affairs at Washington city, proceed at once to cause the offender to be arrested and punished according to the laws of the United States....

15 Stat. 649. While defendants maintain that this provision was narrowly aimed at keeping the peace, it is an axiom of federal Indian law that treaties be liberally construed to favor Indians and ambiguities be resolved in favor of the Indians. *Choctaw Nation v. United States,* 318 U.S. 423, 431–32, 63 S.Ct. 672, 677–78, 87 L.Ed. 877 (1943); *McClanahan v. Arizona State Tax Comm'n,* 411 U.S. 164, 174, 93 S.Ct. 1257, 1263, 36 L.Ed.2d 129 (1973). Thus, this treaty provision may impose a special duty on defendants to enforce civil and criminal provisions, such as Section 2, that affect the Crow Tribe.

Second, the federal trust relationship between the United States and the Crow Tribe limits executive authority and discretion to administer Indian property and affairs. F. Cohen, *Handbook of Federal Indian Law,* 226 (1982). Arguably, then, the trust relationship and the government's duty of loyalty to the Tribe [8] restrict the scope of the prosecutorial discretion relied upon by defendants in support of their motion to dismiss.

In sum, the Crow Tribe has sufficiently supported its allegation that defendants have exceeded their discretion in this case in order to survive the pending motion to dismiss. Fed.R.Civ.P. 12; *Conley v. Gibson,* 355 U.S. 41, 47–48, 78 S.Ct. 99, 102–103, 2 L.Ed.2d 80 (1957). Whether defendants have in fact exceeded or abused their discretion in failing to enforce Section 2, as the Crow Tribe alleges, is a question that must be resolved later.

---

**8.** *See, e.g., United States v. Creek Nation,* 295 U.S. 103, 55 S.Ct. 681, 79 L.Ed. 1331 (1935);

## CONCLUSION

Upon review of the record in this case and applicable authority, the Court concludes that the Crow Tribe has standing to maintain this suit and that neither sovereign immunity nor executive discretion bars plaintiff's claim for mandamus relief. Accordingly, the motion of defendants to dismiss is denied. An order consistent with this Memorandum Opinion will be issued.

---

*Lane v. Pueblo of Santa Rosa,* 249 U.S. 110, 113, 39 S.Ct. 185, 186, 63 L.Ed. 504 (1919).